FILED
JAMES BONINI

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO CLERK

**03 DEC 23 PM 3: 16**

Tracy L. Johnson,
          Petitioner,

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

v.                                    Case No.:   CR 2-00-24

United States of America,
          Respondent.

**C2  03  1230**

**JUDGE GRAHAM**

**MAGISTRATE JUDGE KING**

MEMORANDUM OF LAW IN SUPPORT OF
SECTION 2255 MOTION

### INTRODUCTION

Now comes, Tracy L. Johnson, pro se, (Hereinafter "Petitioner")
and hereby respectfully submits this memorandum of law in support
of his motion filed pursuant to 28 U.S.C. § 2255.   In support there-
of, Petitioner asserts the following:

### SUMMARY STATEMENT

Petitioner a prisoner in custody under a sentence of a court
established by the Act of Congress claiming the right to be released
upon the ground that the sentence was imposed in violation of the
Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence
was in excess of the maximum authorized by law, or is otherwise
subject to collateral attack, may move the court which

the sentence to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255 on issues presented herein, to wit:

## STATEMENT OF CASE

Following a jury trial in the United States District Court for the Southern District of Ohio, Petitioner was convicted on one count of conspiracy to distribute cocaine base, in violation of 21 U.S.C. § 841 (Count 1); two counts of distribution of crack cocaine, in violation of 21 U.S.C. § 841(a)(1)(Counts 4 and 6); and two counts of brandishing a firearm during and in relation to the substantive drug trafficking offenses charged in Counts 4 and 6, in violation of 18 U.S.C. § 924(c)91)(A)(Counts 5 and 7). Petitioner was sentenced to concurrent 77-month terms of imprisonment on the drug distribution and conspiracy counts (Counts 1, 4, 6), a consecutive 84-month term of imprisonment on the first of the Section 924(c)(1)(A) counts (Count 3), and a consecutive 300-month term of imprisonment on the second Section 924(c)(1)(A) count (Count 5). The  Sixth Circuit Court of Appeals affirmed the conviction and sentence, and writ of certiorari by the Supreme Court was denied. Petitioner now files a temely petition pursuant to 28 U.S.C. § 2255.

2

I.   WHETHER RING V. ARIZONA AND APPRENDI V. NEW JERSEY
     RENDERS 18 U.S.S.G. § 2D1.1 FACIALLY UNCONSTITUTIONAL
     AND PETITIONER'S SENTENCE INVALID.

(i)  Basic principles of statutory construction ——

    The Supreme Court instructs us that "every reasonable con-
struction must be resorted to, in order to save a statute from
unconstitutionally". Hooper v. California, 155 U.S. 648 (1895);
see also, Miller v. French, 530 U.S. 327,336 (2000)(counseling
courts to avoid "constitutionally doubtful constructions"). Thus,
"if an otherwise acceptable construction of a statute would
raise serious constitutional problems, and where an alternative
interpretation of the statute is 'fairly possible', we are
obligated to construe the statute to avoid such problem." INS v.
St. Cyr., 533 U.S. 289, (2001)(quoting Crowell v. Benson, 285 U.S.
22,65 (1932)). This obligation does not give us the unfettered
prerogative to re-write a statute in order to save it or to
"ignore the legislative will" behind it. Miller, 530 U.S. at 341.
Rather, "[w]here Congress has made its intent clear, we must give
effect to that intent." Id at 336 (quoting Sinclair Refining Co.
v. Atkinson, 370 U.S. 195 (1962).

    " '[T]he starting point for interpreting a statute is the
language of the statute itslef'." Hallstrom v. Tillamook County,
493 U.S. 20,25 (1989)(quoting Consumer Prod. Safety Comm'n v. GTE
Sylvania, Inc. 447 U.S. 102,108 (1980)). "If the statutory lang-
uage is unambiguous, in the absence of a clearly expressed legis-
lative intent to the contrary, that language must ordinarily be

                                3

regarded as conclusive." <u>Reves v. Ernst & Young</u>, 507 U.S. 170,177

(1993)(citations and internal quotation marks omitted). Where the

language is not dispositive, we look to the Congressional intent

"revealed in the history and purposes of the statutory scheme."

<u>Adams Fruit Co. v. Barrett</u>, 494 U.S. 638,642 (1990). With this

guidance in mind, we must look first and foremost to the legal

reasoning way every Appellate Court that has addressed facial

constitutional challenges to 21 U.S.C. § 846 and 841 under

<u>Apprendi</u> has upheld its constitutionality. Most Court(s) agree

with and adopt the reasoning of <u>United States v. Brough</u>, 243 F.

3d 1078,1079 (7th Cir. 2001):

> "Apprendi... [does] not establish that anything
> in § 841 is unconstitutional or require(s) its
> severance. If Congress had specified that only
> judges may make the findings required by §
> 841(b), or that these findings must be made by
> a preponderance of the evidence, then § 841
> would create a constitutional problem. But the
> statute does not say who makes the findings or
> which party bears what burden of persuasion.
> Instead the law attaches effects to facts,
> leaving it ti the judiciary to sort out who
> determines the facts, under what burden." Id.
> at 1079. *

Compare, the Supreme Court's decision in <u>Edwards v. United

States</u>, 523 U.S. 211 (1998) which held that, the Federal

Sentencing Guidelines authorized the Judge, not the Jury to

determine drug type and quantity. Id. See, e.g., <u>United States

v. Doggett</u>, 230 F.3d 160,166 (5th Cir. 2000);<u>Talbott v. Indiana</u>,

226 F.3d 866,869 (7th Cir. 2000); and <u>Derman v. United States</u>,

298 F.3d 34 (1st Cir. 2002).

---

* See, <u>United States v. Collazo</u>, 281 F. 3d 320, 324-25(1st Cir. 2002);<u>United States v. Buckland</u>, 277 F.
3d 1173,1178-83(9th Cir.2002)(en banc);<u>United States v. Kelly</u>, 272 F. 3d 622 (3rd Cir. 2001); <u>United
States v. McAllister</u>, 272 F. 3d 228, 232-33(4th Cir. 2001);<u>United States v. Cernobyl</u>, 255 F. 3d 1215,
1218-19 (10th Cir. 2001);<u>United States v. Martinesz</u>, 253 F. 3d 251, 256 n. 6 (6th Cir. 2001); <u>United
States v. Brough</u>,243 F. 3d 1078, 1080 (7th Cir. 2001), cert. Denied, 532 U.S. 1045, (2001);<u>United

<u>DISCUSSION</u>

Petitioner contends that the United States Sentencing Guidelines, (U.S.S.G.), as applied to him, is unconstitutional in that it permits a judge rather than the jury to determine types and quantities of controlled substances not specified in the indictment. See, 18 U.S.S. G. § 2D1.1, commentary note 12, which states in relevant part:

> "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See, § 1B1.3(a)(2)(Relevant Conduct). Where there is no drug seizure or the amount seized does not reflect the scale of the offense, <u>the Court shall approximate the quantity</u> of the controlled substance".... Id.

In <u>Ring v. Arizona</u>, 536 U.S. 584 (2002), the Supreme Court noted, that <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) held amoung other matters, that the Sixth Amendment did not permit defendants to receive a penalty greater than they could receive under the facts reflected in a jury's verdict, even if a judge's additional findings were characterized as sentencing factors. The Supreme Court in <u>Apprendi</u> recognized that the Constitutional guarantees embedded in in the Sixth Amendment and the Fourteenth Amendment were at stake Id at 476-77. In keeping with those guarantees, the Court held, that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be charged in the indictment and submitted to a jury, and proved beyond a reasonable doubt Id. at 490.

In <u>Ring v. Arizona</u>, quoting extensively from <u>Apprendi</u>, the Supreme Court addressed the Sixth Amendment Right to a jury trial in the context of Capital Sentencing. 536 U.S. at 602-03.

*States v. Slaughter, 238 F. 3d 580, 582 (5th Cir. 2000), cert. denied, 532 U.S. 1045 (2001);United States v. Candelario, 240 F.3d 1300, n.16; United States v. Outen, 286 F. 3d (2nd Cir. 2002).

The Supreme Court described its holding in Apprendi as a determination "that Apprendi's sentence violated his right to a jury determination that he is guilty of every element of the crime with which he is charged beyond a reasonable doubt. That right attached not only to Apprendi's weapons offense but also to the hate crime aggravating circumstance." Id at 602 (citation, internal quotation marks and alteration omitted).

In overruling Walton v. Arizona, 497 U.S. 639 (1990), the Supreme Court in Ring noted that, as with the "hate crime" aggravator in Apprendi, "Arizona's enumerated aggravated factors [necessary for imposition of the death penalty] operate as the functional eqivalent of an element of a greater offense... at Ring, 536 U.S. at 609 (citation and internal quotation marks omitted).

The Supreme Court quoted Justice Thomas's concurring opinion in Apprendi in recognizing that:

> "If the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact, the core crime and the aggravating fact together Constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime."

536 U.S. at 605 (citation, internal quotation marks alterations omitted)(emphasis added).

Ring and Apprendi implicates the foundation that the Federal Sentencing Guidelines Scheme is incompatible with the Sixth Amendment Right to a trial by jury to the extent that it allowed a Sentencing Judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of a aggravated crime. Ring 536 U.S. at 609. In sum, Ring and Apprendi declared that Judges are Constitu-

6

tionally unqualified to decide whether a defendant is eligible for a "greater offense".

Applying the reasoning of Apprendi and Ring to Petitioner's conviction of a lesser crime of 21 U.S.C. § 841(b)(1)(C) and not to the aggravated crime of § 841(b)(1)(A). Under the reasoning of the Supreme Court, that aggravating factor is an essential element of the offenses established in § 841(b)(1)(A) and (B). In sum, the various drug quantities enumerated in § 841(b)(1) are elements of [separate offenses] that must be charged in the indictment and found beyond a reasonable doubt by a jury.

Specifically, the amount of crack cocaine in the present case is a fact that clearly "increases the prescribed range of penalties to which Petitioner is exposed", and thus it has to be charged in the indictment and proven beyond a reasonable doubt. Apprendi, Supra. For example, under the sentencing guidelines, a conviction for a drug offense involving less than 5 grams of crack cocaine, a violation of 21 U.S.C. § 841(b)(1)(C), yeilds a base offense level of 12. See, U.S.S.G. § 2D1.1(c)(14). That corresponds to a prescribed range of 10-16 months. An increase in the amount of cocaine of 5 grams of crack cocaine, a violation of § 841(b)(1)(B), has a corresponding increase in the offense level to 26 and a corresponding increase in the prescribed range of penalties to 63-78 months. See U.S.S.G. § 2D1.1(c)(7). An increase in the amount of cocaine of 50 grams of crack cocaine, a violation of § 841(b)(1)(A), has a corresponding increase in the offense level to 32 and a corresponding increase in the prescribed range of penalties to 121-151. See U.S.S.G. § 2D1.1(c)(4).

7

Because the aggravating factor, the amount of controlled substance, was not charged in the indictment or submitted to a jury, the amount cannot be used to calculate the sentence for Petitioner. Ring and Apprendi, Supra. This Court is thus bound by the offense charged in the indictment and reflected in the jury's verdict a drug trafficking offense involving an undertermined amount of controlled substance. In order to comply with the strictures of the Supreme Court and not apply an aggravating factor that was not charged or submitted to the jury, this Court must calculate Petitioner's sentence using a base offense level of 12 which corresponds to the lowest allowable amount of cocaine. See U.S.S.G. § 2D1.1(C)(14).

The Sentencing Reform Act of 1984 (Title II of Comprehensive Crime Control Act of 1984), pursuant to the Act, the Sentencing Court must select a sentence from within the guideline range. If, however, a particular case presents a typical features, the Act allows the Court to depart from the guideline and sentence outside the prescribed range. 18 U.S.C. § 3553(b).

Title 18 U.S.C. § 3551, entitled "Authorized Sentences", state in relevant part:

> (a) "... a defendant who has been found guilty of an offense described in any Federal Statute, [...], shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553 to the extent that they are applicable in light of all the circumstance of the case." Id.

Title 18 U.S.C. § 3553(b) mandates application of the sentencing guidelines and caps a sentence at the top of the applicable guidelines range. Where a statutory provision applies, a sentencing

8

court's concern with the guideline goes solely to the upper limit of the proper guideline range as setting the maximum term for which a defendant may be committed to prison.

It is well settled law that the guideline have the force and effect of law and are legally binding enacted criminal statutes, particularly because the sentencing ranges promulgated by the Commission including maximums and minimums, are incorporated into the Federal Statute by 18 U.S.C. § 3553(b).

In the case at bar, Petitioner was charged and convicted of conspiracy and possession with intent to distribute an unspecified amount of controlled substance. That is, the jury determined only that he harvested a measurable or detectable amount of controlled substance. U.S.S.G. § 2D1.1 provides for a base offense level of 12 for measurable amounts of cocaine or cocaine base. All higher base offense levels require higher drug amount threshold before such levels are appropriate.

In addition to the plain language and straight forward logic of Ring, citing, Apprendi, the basic structure of the sentencing guidelines demonstrates that the holding of Apprendi applies to Petitioner's sentencing. In chapter I, part A of the U.S.S.G. manual, the sentencing guidelines. Commission describes the theory and methodology utilized in crafting the present guide-lines. Under a heading entitled "The Basic Approach", the Commission writes:

> "In its initial set of guidelines, the Commission sought to solve both the practical and philosophi-cal problems of developing a coherent sentencing system by taking an empirical approach that used as a starting point data drawn from 10,000 pre-sentence investigations, the differing elements

9

> of various crimes as distinguished in substantive
> criminal statutes, the United States Parole Com-
> mission's guidelines and statistics, and data from
> other relevant sources in order to determine which
> distinctions were important in pre-guidelines prac-
> tice. After consideration, the Commission accepted,
> modified, or rationalized these distinctions."

U.S.S.G. chapter 1, part A (emphasis added).

Further, the Commission states:

> "The Commission did not simply copy estimates of pre-
> guidelines practice as revealed by the data, even
> though establishing offense values on this basis
> would help eliminate disparity because the data
> represent averages. Rather, it departed from the
> data at different points for various important
> reasons. Congressional Statutes, for example, sug-
> gested or required departure, as in the case of the
> Anti-Drug Abuse Act of 1986 the imposed increased
> and mandatory minimum sentences."

Id. (emphasis added).

Additionally, in describing how the respective base offense
levels came into being the Commission explains:

> "In determining the appropriate sentencing ranges
> for each offense, the Commission estimated the
> average sentence served within each category under
> the pre-guidelines system. It also examined the
> sentences specified in Federal Statutes, in the
> parole guidelines, and in other relevant, analogous
> sources. The Commission's Supplementary Report on
> the initial sentencing guidelines (1987) contains
> a comparison between estimates of pre-guidelines
> sentencing practice and sentences under the guide-
> lines.

Id. (emphasis added).

Clearly, the foundation of the guidelines and the specific
offense levels themselves are predicated, at least in part, on the
sentences contained in the Federal Statutes and with the mandatory
minimum provisions. This is why base offense levels for drugs are
higher than those for fraud or immigration offenses. As an example,
the minimum offense level for any cocaine distribution offense

10

would be 12, as argued in the instant case. The minimum offense
level for a fraud case is 6, U.S.S.G. § 2F1.1, and for an immi-
gration case is 8. U.S.S.G. 2L1.2. Obviously, the Commission
created offense levels that reflect the higher statutory penalties
associated with drugs than with fraud and immigration. See also,
the commentary to § 2D1.1 captioned "Background", the base offense
levels in § 2D1.1, apply to all unlawful drug trafficking. The
base offense levels at 26 and 32 establish guidelines ranges with
a lower limit as close to the statutory minimum as possible; e.g.,
level 32 ranges from 121-151 months, where the statutory minimum
is 10 years or 120 months Cf., 21 U.S.C. § 841(b)(1)(A), calling
for a term of imprisonment of not less than 10 years or more than
life.

It follows that the logic of Ring and Apprendi would extend
to the guidelines. The amount of controlled substance triggers
an aggravated penalty and a commensurate increase in the senten-
cing guidelines base offense level which results in a higher
penalty. This higher guideline could extend beyond a statutory
maximum. It is the amount that triggers this result. That amount
is not charged in the indictment. This is the heart of the Ring
ruling that any "fact that increase the prescribed range of
penalties to which a criminal defendant is exposed" must be sub-
mitted to a jury, and proved beyond a reasonable doubt.

In sum, because the indictment failed to charge a specific
amount of controlled substance ——— the situation is simple:
The Constitution requires that drug quantity be treated as an
essential of the drug distribution offense as constructed under

11

21 U.S.C. § 841 and [18 U.S.S.G. § 2D1.1], but Congress required that the drug quantity be determined by the judge as a sentencing factor. (18 U.S.S.G. § 2D1.1, commentary note 12)

> "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the Court shall approximate the quantity of the controlled substance." Id.

This conflict renders 18 U.S.S.G. § 2D1.1 unconstitutional. Petitioner, however, argues simply that because the 2D1.1 Statute is unconstitutional, any indictment charging conspiracy and possession with intent to distribute an unspecified amount of controlled substance under 21 U.S.C. § 841 or 846 is void, and in violation of Due Process.

In sum, because the indictment failed to charge a specific amount of crack cocaine, this Court cannot use the amount of cocaine to "increase the range of penalties to which Petitioner is exposed". See, Ring and Apprendi, Supra. This Court must, therefore, calculate Petitioner's sentence using a base offense level of 12. See U.S.S.G. § 2D1.1(c)(14). The correct final guidelines range for Petitioner is thus 10-16 months.

II.        THE DISTRICT COURT LACKED JURISDICTION TO CON-
           VICT OR SENTENCE PETITIONER UNDER COUNT ONE
           BECAUSE COUNT ONE FAILED TO CHARGE A CRIME

Petitioner submits that "willfully" is an essential element
of conspiracy which must be charged in the indictment.  Compare,
United States v. Kurka, 818 F.2d 1422 (9th Cir. 1987)(holding,
indictment failed to charge that damage to motor vehicle was
"willful" , failed to charge essential element of crime and was
constitutionally defective);  United States v. Velez, 652 F.2d
258 (2nd Cir. 1981)("willful membership is a crucial element of
the charge of conspiracy to import and tp possess with intent to
distribute cocaine");  and United States v. Cancelliere, 69 F.3d
1116 (11th Cir. 1985)(redactment of indictment from "knowingly
and willfully" to simply "knowingly" was prejudicial error).

A safely guarded ambodiment of the Sixth Amendment and Four-
teenth Amendment right to due process is the right of a criminal
defendant to have notice of the charges pending against him.  Cole
v. Arkansas, 333 U.S. 196 (1948)("No principle of procedural due
process is more clearly established than that notice of a specific
charge, if desired, are among the constitutional rights of every
accused in a criminal proceeding in all courts, state or federal");
and Gray v. Netherland, 518 U.S. 152 (1996)("A defendant's right
to notice of the charges against which he must defend is well
establish").  Here, the omission of "willfully" violated the
Petitioner's constitutonal rights to notice of the charged offense.

Because, the Petitioner's indictment did not charge that his
conduct was "willful" it is clear that the grand jury found he

13

"willfully" did anything. The Supreme Court in Cole, supra., held that "it is as much a violation of due process to send an accused to prison following conviction of a charge on which he was never [] tried as it would be to convict him upon a charge that was never [] made. Id. Cole, 333 U.S. at 201.

In a similar case, although not challenged by the defendants, the Second Circuit noted, in United States v. Blackwell, 119 F.3d 129, 132 (2nd Cir. 1999), that "the elements of a crime of conspiracy are not noted in the indictment." A close reading of Blackwell's [] indictment presentes the same problem as in the instant case both indictments did not charge "willfully." See, United States v. Thompson, 533 F.2d 1006 (6th Cir.), cert. denied, 429 U.S. 939 (1976). Noting, the essential elements of conspiracy are: (1) that the conspiracy described in the indictmnet was "willfully" formed and, (2) that the accused "willfully" became a member of the conspiracy.

Although the element of "willfully" is not stated in title 21 U.S.C. § 846 itself, it is an implied and necessary element that the government must prove for a conviction under § 846. See, e.g., United States v. Dubo, 186 F.3d 1177 (9th Cir. 1999)("implied, necessary element, not present in the statutory language must be included in an indictment"). id.

Thus, because this fact, i.e. "willfully" was never considered by the grand jury, the district court lacked subject matter jurisdiction to try the Petitioner in this case.

In a criminal case a "failure of the indictment to charge an offense may be treated as [a] jurisdictional defect," United

14

States v. Doyle, 348 F.2d 715 (2nd Cir. 1965). The ultimate question presented upon an application for habeas corpus on the ground that the act charged in the indictment does not constitute a crime is not the guilt or innocence of the defendant, but simply whether the court had jurisdiction. In Re Gregory, 219 U.S. 210 (1911).

Where a person is detained for the doing of certain acts which do not constitute a criminal offense under the law of the particular jurisdiction, the court is without jurisdiction and he may be discharged in habeas corpus proceeding. Hyde v. Shine, 199 U.S. 62 (1905); Greene v. Henkel, 183 U.S. 249 (1902). An indictment may be inquired in a habeas corpus proceeding for the purpose of determinating whether it states an offense known to the law. United States v. Koptik, 300 F.2d 19 (7th Cir. 1962).

Here, Petitioner's indictment do not connote the proper mens rea for a conspiracy conviction. Failing to enforce this requirement would allow a court to "guess as to what was in the minds of the grand jury at the time they returned the indictment. Such guessing "deprive the defendant of a basic protection that the grand jury was designed to secure." Russell v. United States, 369 U.S. 749, 770 (1962). It is for these reasons Count (1) must be vacated.

15

III.     THE TESTIMONY OF ONE WHO PROVIDES EVIDENCE AGAINST
         A DEFENDANT AS AN INFORMER FOR PAY OR FOR IMMUNITY
         FROM PUNISHMENT OR FOR PERSONAL ADVANTAGE OR VIN-
         DICATION —— DENIED THE PETITIONER DUE PROCESS OF
         LAW AND A FAIR TRIAL

     In such case as in this one, the Court should give a cautionary

instructions to the jury that it should "never" convict any defen-

dant upon the unsupported testimony of such a witness, "unless"

you believe that testimony beyond a reasonable doubt.

     For example here, given the nature of Stanley Davis' testimony

and the fact that the record reflected, it may have been false,

unreliable, bias and misleading.  It was plain error for counsel

not to request and/or the court not to give the proper instruction.

Because Stanley Davis' testimony was the only direct evidence of

Petitioner's guilt, in the crime(s) charged.  Said testimony was

not corroborated by any independent evidence of the Petitioner's

participation in the crimes.  When applying plain error standard,

when proper accomplice or informant instruction was neither re-

quested nor given, but stating that it would have been reversible

error not to have done so if requested.  United States v. Jones,

673 F.2d 115 (5th Cir. 1982).  The rational behind such requirement

is to insure that no verdict based on the uncorroborated testimony

of witnesses who may have good cuase to lie, is too lightly reached.

United States v. Garcia, 528 F.2d 580 (5th Cir. 1976).

     In the present case, the District Court gave an instruction

related to a standard informant testimony instruction.  However,

it is Petitioner's position that the following instruction should

16

have been given:

> "... You should 'never' convict any defendant
> upon the unsupported testimony of such a wit-
> ness unless you believe that testimony beyond
> a reasonable doubt."

United States v. Bernal, 814 F.2d 175, 181 n.12 (5th Cir. 1987).

Accordingly, Petitioner's convictions should be vacated, and granted a new trial.

IV.  WHETHER PETITIONER'S CONVICTION(S) VIOLATES THE FIFTH AMENDMENT'S DUE PROCESS RIGHTS AND SIXTH AMENDMENT'S GUARANTEES OF NOTICE AND JURY TRIAL, AND IS CONTRARY TO THE SUPREME COURT'S DECISION IN APPRENDI V. NEW JERSEY, 530 U.S. 466 AND RING V. ARIZONA, 153 L.ED2d 556 BECAUSE, PETITIONER WAS SENTENCED TO A TERM OF 461 MONTHS IMPRISONMENT UNDER 21 U.S.C. §§ 846, 841(a)(1) AND 18 U.S.C. § 924(c) WITHOUT THE CONSTITUTIONAL PROTECTIONS OF GRAND JURY INDICTMENT, JURY TRIAL OR PROOF BEYOND A REASONABLE DOUBT OF ELEMENTS OF THE OFFENSE

A.  Petitioner Indictment Was Fatally defective, And Trial Counsel Was Ineffective For Not Objecting To It Being Dismissed

Petitioner respectfully submits that his indictment is fatally defective with respect to fair notice of the penalties subsection he was exposed to, were not given.

The factual basis for this argument is that petitioner was indicted for violation of 21 U.S.C. §§ 846 and 841(a)(1), which reads:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the of the attempt or conspiracy.

21 U.S.C. § 846

\* \* \* \* \* \* \* \* \* \* \*

> It shall be unlawful for any person knowingly or intentionally, (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

21 U.S.C. § 841(a)(1)

the penalty provisions were not pleaded in his indictment, therefore the indictment does not provide fair notice of the maximum

18

penalties in which petitioner would be exposed, and therefore the indictment is fatally defective.

The legal basis for this argument is that elementary notions of fairness enshrined in our constitutional jurisprudence dictates that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that may be imposed. BMW of North America Inc., v. Gore, 517 U.S. 559 (1996). Also see, United States v. Reese, 92 U.S. 214, 232-233 (1876), for the well settled principle that "indictment contain an allegation of every fact which is legally essential to the punishment to be inflicted." Id.

A basis principle of the criminal law has always been that the government prosecutes people for crime under statute passed by Congress which fairly and clearly define the conduct made criminal and the punishment which can be administrated. It is the punishment prescribed which makes an act a crime, not mere interdiction of the conduct without punishment. See, 21 Am Jur. 2d Criminal Law § 5 at 118 (to constitute a crime, the act in question must ordinarily be one to which is annexed, upon conviction, a certain specified punishment. And it has been held that statute declaring an act unlawful, but prescribing no penalty, does not create a crime).

In light of the above mentioned principle, the petitioner contends that because his indictment did not list a specific penalty under sub-section "A", "B", or "C" of 21 U.S.C. § 841(b) (1), the indictment was defective.

Also interesting and telling in favor of petitioner's argu-

19

ment is the eye-opening discussion during Oral Argument in
Edwards v. United States, 523 U.S. ___, (1998), where Justice
Scalia stated:  "there are no penalties in Section 841(a);
therefore, Section 841(a) cannot be the object of the conspiracy
under the language in Section 846."  When the government re-
sponded that the penalties for § 841(a) are enumerated in § 841
(b), justice Scalia retorted that Section 841(b) then becomes
part of the offense.

In light of the above mentioned principle, the petitioner
contends that because his indictment failed to specify one of
the penalties under sub-section 841(b)(1), was fatally defective,
because  of language of § 846.

Petitioner avers that counsel knew or should have known to
object to the indictment being dismissed for the above mentioned
that indictment failed to list penalties sub-section under 841
(b)(1), therefore, cause petitioner to receive a sentence of 461
months.   Which rendered counsel ineffective under the Sixth
Amendment of the United States Constitution, therefore, petitioner
convictions must be vacated.

B.          The Violation Of Petitioner's Fifth Amendment
            Constitutional Right To Fair Notice Of The Maximum
            Sentence Also Violated His Sixth Amendment Right
            To Effective Assistance Of Counsel

Petitioner further contends that he was robbed of the
opportunity to make a reasonable informed decision as to whether
to enter a guilty plea.  See, Santobellow v. United States, 404
U.S. 257, 260-61 (1971), where the Court recognized that "although

20

the right to plea bargain is not constitutionally protected, it certainly is a valued and essential component of an efficient justice system."

The above mentioned defect in the indictment in part (A) also prevented counsel from offering his informed opinion as to what plea should be entered, and therefore, rendered counsel's performance constitutionally ineffective, thereby depriving petitioner of his Sixth Amendment right to effective assistance of counsel.

The factual basis for this argument is quite simple. Since 21 U.S.C. § 841(b)(1) has four separate sub-section that gives a totally different minimum and maximum penalties (depending upon the actual type and quantity of controlled substance involved) and because the indictment did not allege a drug quantity or a particular sub-section under § 841(b)(1), counsel therefore could not and did not offer his informed opinion as to what plea should be entered. In fact, the very first time petitioner received actual or fair notice of the penalty he was subject to, came after his conviction, via the presentence report. However, prior to his trial, petitioner had to rely on pure guess-work as to the quantities of controlled substance involved in the drug offenses alleged in the indictment, and therefore he had no way of knowing the penalty he was subject to, or what plea should be entered.

The legal basis for this argument is equally simple. See, Von Moltke v. Gillies, 332 U.S. 708, 721 (1948), where the Court announced the principle that "[p]rior to trial an accused is en-

21

titled to rely upon his counsel to make an independent examination
of the facts, circumstances, pleadings and the laws involved  and
then to offer his informed opinion as to what plea should be entered."
Accordingly, without counsel knowing the quantity of the controlled
substance and/or the sub-section petitioner was subject to being
sentenced under, counsel could not and did not offer his informed
opinion as to what plea should be entered.

In the case at hand, petitioner was denied effective assist-
ance of counsel in light of the charging indictment did not list
the quantity and/or the sub-section that petitioner was subject to
be sentenced under, so counsel could not given his informed
opinion what plea to enter. Therefore, petitioner could not and
did not know the consequence of the crimes charged in the indict-
ment and did not make intelligent decision as to what plea should
be entered. Nor was petitioner afforded his due process  right
to fair notice of the penalty he was subject to, rendered counsel
ineffective under petitioner's Sixth Amendment right of the United
States Constitution. For those reasons, his convictions must be
vacated as being constitutionally infirm.

C.      The sentencing Court erred in sentencing the Pet-
        itioner to 300 months under an entirely separate
        statute [§924(C)] not charged in the indictment,
        and based on the Judge's finding of aggravating
        facts

22

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum," whether the statute calls it an element or sentencing factor, "must be submitted to a jury and proven beyond a reasonable doubt." Id., at 490; Harris v. United States, 153 L.Ed.2d 524 (2002); Ring v. Arizona, 153 L.Ed.2d 556 (2002). "In federal prosecutions such facts must also be charged in the indictment." United States v. Cotton, 152 L.Ed.2d 860 (2002), citing Apprendi, supra., at 476 (Quoting Jones v. United States, 526 U.S. 227, 243 n.6).

In Apprendi, the Supreme Court established that "any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime —— and thus the domain of the jury —— by those who framed the Bill of Rights." Harris v. United States, supra.

The Court explained that:

> "The dispositive question 'is one not of form, but of effect.' If a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, the fact —— no matter how the state labels it —— must be found by a jury beyond a reasonable doubt.
>
> A defendant may not be 'exposed ... to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone."
>
> Ring v. Arizona, 153 L.Ed.2d 556 (2002), quoting Apprendi, supra., at 482-83, 494.

## THE STATUTORY CONSTRUCTION OF 18 U.S.C. § 924(c)

[I]n Harris v. United States, 153 L.Ed.2d 524 (2002), the inquiry dealt with statutory construction. Id. Did Congress make brandishing an element or a sentencing factor in 18 U.S.C. § 924 (c)(1)(A)? [T]he government proceeded on the assumption that § 924 (c)(1)(A) defines a single crime and that brandishing is a sentencing factor to be considered by the judge after the trial. For this reason the factors in subsections (ii) and (iii) need not be alleged in the indictment, submitted to the jury, or proven beyond a reasonable doubt. The defendant Harris, on the other hand, contended that Congress meant the statute to define three different crimes. For example, subsection (ii), Harris says, creates a separate offense of which brandishing is an element.

18 U.S.C. § 924(c)(1)(A) provides in relevant part:

> "[a]ny person who, during and in relation to any crime of violence or drug trafficking crime uses or carries a firearm, or who, in furtherance of any such crime, possess a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crim --
>
> (i)   to be sentenced to a term of imprisonmnet of not less than [5] years;
>
> (ii)   if the firearm is brandished, be sentenced to a term of imprisonment of not less than [7] years; and,
>
> (iii)   if the firearm is discharged, be sentenced to a term of imprisonment of not less than [10] years."

The Harris Court held, basing a 2-year increase in the defen-

dant's minimum sentence on a judicial finding of brandishing does not evade the Fifth and Sixth Amendment's requirements. Because, the finding did not alter the maximum penalty to which <u>Harris</u> was exposed. Cf., <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000). "Any fact extending the defendant's sentence beyond the [m]aximum authorized by the jury's verdict must be charged in the indictment and proven beyond a reasonable doubt. See also, <u>Ring v. Arizona</u>, 153 L.Ed.2d 556 (2002), decided on the same day as <u>Harris</u>, holding the Sixth Amendment does not permit a defendant to be exposed to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury's verdict alone.

## THE QUESTION OF STATUTORY CONSTRUCTION

The <u>Harris</u> Court explained, statute 18 U.S.C. § 924 (c)(1)(A) does not say in so many words whether brandishing is an element or a sentencing factor,

> "Federal laws usuallly list all offense elements 'in a single sentence' and separate the sentencing factors 'into subsections'. [...] The word **'shall'** which often divides offense - defining provisions from those that specify sentences ... and following **'shall'** are the separate subsections, which explains how a defendant's are to 'be sentenced'". [if certain facts are present]. <u>Harris</u>, supra.

Given the structure of 18 U.S.C. § 924(c)(1)(A) stated above, <u>Harris</u> Court found a single - offense interpretation implied by the statute's structure. But see, <u>Castillo v. United States</u>, 530

U.S. 120 (2000)(imposing stiffer penalty for using "machine-gun" in crime of violence held to state element of separate offense, rather than sentencing factor)(citing Jones v. United States, 526 U.S. 227 n.6 (1999)[enhancement elements must be "charged in an indictment"]).

Title 18 U.S.C. § 924(c)(1)(C) provides that "[i]n the case of a second or subsequent conviction under this subsection, the person **shall** (i) be sentenced to a term of imprisonment, not less than 25 years ..." The Supreme Court first ruled on this provision in Deal v. United States, 508 U.S. 129 (1993), holding that where a defendant commits separate offenses on different dates —— each of which stands alone —— and uses a firearm in the commission of each one of the offenses, the government may charge multiple § 924(c)(1) counts.

Under § 924(c)(1)'s "second and subsequent" language, as applied by Deal, a defendant who is convicted on multple § 924(c)(1) counts —— such as a defendannt who stages multiple armed bank robberies over several weeks —— the § 924(c)(1) convictions based on robberies which are subsequent § 924 (c)(1) convictions for sentencing purposes. While carrying a firearm in a drug trafficking offense or crime of violence carries a mandatory and consecutive 60-month sentence to the offense of conviction, a second or subsequent § 924(c)(1) conviction carries a consecutive and mandatory 300-month sentence.

In the instant case, the sentecing court relied on the fact that Petitioner was convicted of a December 21, 1999 sale of .9 grams and a December 21, 1999 sale of .8 grams of cocaine base. (offense involving the same informant, defendant and on the same day less

26

than two hours apart). Was the "second or subsequent conviction" which enabled the sentencing court to enhance his sentence?

On the other hand, Deal dealt with multiple, clearly separate offenses. Over a four-month period, the offender committed "six different bank robberies on six different dates," each with a firearm. Id., at 508 U.S. 130. The majority, based on the facts before it, ruled that Congress could not possibly have meant for a prosecutor to be able to affect the sentencing outcome merely by charging multiple offenses separately in separate indictments rather than in one indictment. Id., at 133-34. Beyond that, the Court found that the language in the statute was clear that the subsequent § 924(c)(1) offense need not occur after conviction for the first one in order to qualify for enhanced penalties. Id., at 131-32. The majority complained (and properly so) that the bank robber defendant should not be able to benefit merely because he was able to evade detection until after his sixth offense. Id., at 137.

The Deal dissent argued that using the majority's interpretation, "prosecutors will continue to enjoy considerable discretion in deciding how many § 924(c) offenses to charge in relation to a criminal transaction or series of transactions. An armed defendant who robs a bank and, at the same time, assaults a guard, may be subject to one or two § 924(c) charges; the choice is the prosecutor's and the consequence, under today's holding, the difference between a 5 and a 15 year enhancement." Deal, supra.

Compare, United States v. Burnetter, 170 F.3d 567 (6th Cir. 1999) holding, that sentencing for multiple § 924(c) counts in the case of a kidnapping and bank robbery was appropriate. But, noting that the kidnapping occurred significantly before, and

27

independent of, the actual bank robbery, rather than being in any way simultaneous. (Emphasis added) Id., at 572.

In the case at bar, the firearm possession came in a continuing offense —— as the government tacitly recognized by charging Count 1 as a conspiracy$^*$ —— rather than independent offenses. Unlike the defendant in Burnetter and Deal, supra., all of whom committed multiple crimes occurring not simultaneously before being caught.

There is something unseemly about an interpretation of § 924(c)(1)(C) which leaves the ability to manipulate sentences by decades at a time in the hands of the government. Clearly, in the case where multiple § 924(c)(1) counts relate to a continuing series of related crimes pursuant to overt acts of a conspiracy, § 924(c)(1)(C)(i) cannot reasonably be interpreted to mean that "the second or subsequent counts can be aggregated from the continuing conduct.

While Deal need not be reversed, the national trend among the government to aggregate related conduct in order to tack on excessive consecutive penalties must be addressed. As set forth in Ring and Harris, supra., the "second or subsequent conviction" under 18 U.S.C. § 924(c), must be treated as an element of an aggravated offense.

The Supreme Court in Castillo v. United States, 530 U.S. 120 (2000) held, imposing stiffer penalty for using "machine-gun" in crime of violence held to state element of separate offense,

---

$^*$ The two separated offense on December 21, 1999 were part of the conspiracy charge in Count One (overt acts).

28

rather than sentencing factor. (Citing, <u>Jones v. United States</u>, 526 U.S. 227 n.6 (1999)(enhancement elements must be "charged in an indictment"). Thus, imposing a stiffer penalty in the instant case for a "second or subsequent conviction" under § 924(c) would violate <u>Castillo</u> and <u>Ring</u>.

Here, at sentencing the court relied on the un-charged 18 U.S.C. § 924(c), which reads as follows:

> "in the case of a second or subsequent conviction under this subsection, the person shall ——
>
> (i)  be sentenced to a term of imprisonment of not less than 25 years;  and,
>
> (ii)  if the firearm involved is a machinegun or a destructive device, or is equipped with a fire-are silencer or firearm muffler, be sentenced to imprisonment for life.

An interpretation of the Supreme Court law stated compels that the statute, § 924(C), is an aggravated crime, that must be charged in the indictment and submitted to the jury for proof beyond a reasonable doubt. <u>Castillo</u>, supra.

> "When the statute imposes a higher penalty upon a second and third conviction, respectfully, it makes the prior conviction of a similar offense apart of the description and character of the offense intended to be punished;  and therefore the fact of such prior conviction must be charged, as well as proved. It is essential to an indictment, that the facts constituting the offense intended to be punished should be averred."  (147 L.Ed.2d at 465).
>
> (<u>Apprendi</u>, Thomas, j., concurring, citing <u>Plumbly</u> <u>v. Commonwealth</u>, 43 Mass. 413 (1841), and <u>Tuttle</u> <u>v. Commonwealth</u>, 68 Mass. 505 (1854).

In the instant case, Petitioner convicted by jury trial of
18 U.S.C. § 924(c)(1), which states in relevant part if a firearm
is used the defendant shall be sentenced to a term of imprisonment
of not less than 5 years. Here, the sentencing court found that
Petitioner had a second or subsequent conviction under the above
stated subsection based on a preponderance of the evidence stan-
dard. Thus, the sentencing court erred in sentencing Petitioner
to 25 years, under an entirely separate statute [§ 924(C)] not
charged in the indictment or proven beyond a reasonable doubt,
as set forth under recent Supreme Court law.

Accordingly, because 18 U.S.C. § 924(c) enumerated aggravating
factors, i.e., "second or subsequent conviction", operates as
the functional equivalent of an element of an greater offense,
the Fifth and Sixth Amendment requires that they be charged in
the indictment and submitted to a jury for proof beyond a reason-
able doubt. Ring and Castillo, supra.


V.      TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO ALLOW
        PETITIONER TO TESTIFY ON HIS OWN BEHALF


The Petitioner had informed trial counsel that he wanted
to testify on his own behalf. In fact, his testimony was dis-
cussed and planned prior to trial.

During trial, Petitioner again asked counsel was he going
to call him to the stand and counsel replied, "yes", he would
and to be patient.

30

The Supreme Court has held that the right to take the stand
is essential to due process of law and is fundamental constitu-
tional right. See, Rock v. Arkansas, 483 U.S. 44 (1987).

Moreover, the right to testify transcends trial strategy
and is not a matter that any defense counsel can unilaterally
decide by himself. See, Jones v. Barnes, 463 U.S. 745.

The right to testify is also part of the compulsory process
clause of the Sixth Amendment, noting that in many cases, the
defendant is the most important witness. See, Rock, supra., Id.
at 483 U.S. 52.

While there is no question that an attorney should advise
the defendant about the ramifications of testifying in his own
behalf, and the pitfalls which may arise upon taking the witness
stand, however, under the law, the ultimate decision as to whether
or not to testify rests with the defendant, and he is the only
person to make the ultimate decision.

Here, Petitioner elected to testify in his own behalf and
counsel stated that he would put the Petitioner on the stand,
but counsel took matters into his own hands and did not honor
the Petitioner's request without any explanation. Trial counsel's
failure to allow the Petitioner to testify fell outside the wide
range of professional competent assistance, and there remains
a reasonable probability had the Petitioner been allowed to testify,
the outcome would have been different. See, Strickland v. Washing-
ton, 466 U.S. 668. Here, the government cannot point to any fact
that would show that this jury would not have believed Petitioner
had he took the witness stand in this case.

A criminal defendant has a constitutional right, grounded in the Due Process Clause of the Fifth Amendment, to testify in his own defense at trial. See, Rock, supra. The "accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his own behalf, or take an appeal." Jones, supra. "The right of a defendant to take the stand is fundamental and may only be waived by the defendant himself." See, United States v. Chambers, 944 F.2d 1253 (6th Cir. 1991) quoting, Wainwright v. Sykes, 433 U.S. 72 (1977).

Here, the Petitioner was completely excluded from participating in the decision made which waived his right to testify at trial. The principle witness whom testified against Petitioner, under inherently bias circumstances, a jury is generally required to receive such testimony with caution. Petitioner, had he testified, would have refuted the claims of Petitioner being involved in the conspiracy. The jury may have found Petitioner's testimony more credible and less impeachable than the government's witnesses. The waiver of his right to testify to refute witnesses, uncorroborate testimony, was prejudicial. See, e.g., Jordon v. Hargett, 34 F.3d 310 (5th Cir. 1994)(reversed because counsel improperly coerced the defendant not to testify with claims of use of prior record).

In the case at bar, trial counsel told Petitioner that if he decided to testify; and if the jury found his testimony uncredible, he would go to jail for a very long time. This was counsel's reason for not calling Petitioner to the stand. The right of

32

defendant to take the stand is fundamental and may only be waived by the defendant himself. Chambers, supra.

Accordingly, counsel erred in not calling Petitioner to the stand. Because, clearly the only person that could have put this evidence/testimony in question is the Petitioner by taking the stand and testifying in his own behalf.


VI.     PETITIONER SHOULD BE ENTITLED TO AN EVIDENTIARY
        TO SHOW COUNSEL WAS INEFFECTIVE FOR FAILURE TO
        MOVE FOR SUPPRESSION OF TAPE RECORDINGS


Before and during trial, Petitioner made several complaints to trial counsel concerning challenging the body wire or tape recording equipment, because it was not his voice on tape. The conversation on the tape recording made was muffled and not clearly discernable. In sum, the tapes would have been inadmissible had counsel filed a suppression motion, because tapes were inaudible and untrustworthy as a matter of law. Here, the record reflects there was no request for an audibility hearing and the tapes were available for an extensive period of time, without any objections as to its quality. (Emphasis added).

The use of tape recording at trial can be critical in that such recordings create a string impression on the jury. United States v. McKeever, 169 F.Supp. 426 n.1 (S.D.N.Y. 1958). In the case at bar, the government claimed to have tape recordings of the conversation occurring during the controlled substance purchases between Petitioner and a government informant, however,

33

the recordings were entirely or substantially inaudible and tainted.

After a de novo review of the record, it is concluded that trial counsel had ample opportunity to review and contest the inadmissibility of the recordings, prior to trial. Counsel failed to make certain evidentiary objections at trial, such as the failure to object to the introduction at trial of alleged tape recordings where the government's informant testified that the recordings may have been inaudible; and failure to move for suppression of tape recordings and an audibility hearing.

In sum, it was not until trial that counsel complained tapes were tampered with and it was not Petitioner's voice on the in-criminating tape recorded conversation between [Petitioner] and a government informant. Counsel should have submitted those tapes for scientific examination, which includes testing for tampering, erase analysis and admissibility.

Furthermore, because "recorded evidence is likely to have a very strong impression on a jury, and is susceptible to altera-tion," the evidence of its authenticity and accuracy must be "clear and convincing." United States v. Ruggiero, 928 F.2d 1289 (2nd Cir. 1991); United States v. Baynies, 687 F.2d 659 (3rd Cir. 1982)(tape recording conversation was the only evidence intro-duced against defendant, failure of trial counsel to listen to exemplar of defendant's voice and compare it with the government's intercepted recording constituted ineffective assistance of counsel and was not harmless). Thus, to establish authenticity, "the possibility of (material) alterations to the tape 'must be elimi-nated' as a reasonable possibility." United States v. Bright, 630 F.2d 804 (5th Cir. 1980).

Applying these standard to the facts of this case, it is concluded that the government, as the proponent of the tape recorded evidence, may have failed to carry its burden of authentication.  Thus, counsel was ineffective for failure to investigate and challenge tape recorded evidence prior to trial.

VII.    WHETHER TRIAL COUNSEL FAILURE TO OBJECT TO S CON-
        STITUTIONALLY DEFECTIVE JURY INSTRUCTION CONSTITUTE
        <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>

"If counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable."  <u>United States v. Cronic</u>, 466 U.S. 648 (1984).

Here, Petitioner contends that his Sixth Amendment right to effective assistance of counsel was violated by the failure of his attorney to challenge jury instruction during trial and on direct appeal.  See, <u>Bloomer v. United States</u>, 162 F.3d 187 (2nd Cir. 1998)(counsel's failure to raise, at trial or in first post-conviction motion, clear and previously identified errors in trial court's reasonable doubt instructions suggested deficient performance, warranting remand).

In the case at bar, Petitioner charged with violating 18 U.S.C. § 924(c)(1)(A)(i) and (ii)(Counts 3 and 5).  At the conclusion of the trial, the district court included in the charge the following instructions:

"... the government must prove that the fire-

35

> arem was either brandished or carried during the
> commission of a drug-trafficking crime **which has
> been proved beyond a reasonable doubt to have
> been committed by the defendant** (emphasis added)
> (Tr. 870-71).

The trial court's instruction advised the jurors ―― that
an essential elements was proved beyond a reasonable doubt. There
was no objection to this instruction. The jury ultimately con-
victed Petitioner on both Counts 3 and 5. By instructing the
jury that the government has proven the above stated element,
the court gave the jury the clearly unlawful option of convicting
on a lower standard of proof.

In Sullivan v. Louisiana, 11' S.Ct. 2078 (1983), the Supreme
Court held that a constitutionally deficient reasonable-doubt
instruction can never be harmless error. This is so because,
by instructing the jury erroneously on its burden of proof, the
court deprives the defendant of his right, under the Fifth and
Sixth Amendments, to have a jury rather than a judge reach the
conclusion that he is guilty beyond a reasonable doubt. Id. at
2081-83. Thus, when the trial court has seriously misdescribed
the reasonable-doubt standard, "there has been no jury verdict
within the meaning of the Sixth Amendment." Sullivan, supra.

36

For all the reasons stated above this Honorable Court should grant the instant § 2255 petition.

Execute on __12/15/03__.

Respectfully submitted

Tracy L. Johnson

37

# CERTIFICATE OF SERVICE

I, Tracy L. Johnson _____, hereby certify that I have served a true
and correct copy of the foregoing:

Which is deemed filed at the time it was delivered to prison authorities for forwarding to
the court, Houston vs. Lack, 101 L.Ed.2d 245 (1988), upon the court and parties to
litigation and/or his/her attorney(s) of record, by placing same in a sealed, postage
prepaid envelope addressed to:

      Office of the U.S. Attorney
      Southern District of Ohio

and deposited same in the United States Postal Mail at the United States Penitentiary,

Signed on this _12-15_ day of _2663_ ,

                          Respectfully Submitted,

                          _Tracy W. Johnson_

                  REG. NO. 65304-061